UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM AMBROSE,

    Plaintiff,

v.                                                                         CASE NO. 3:08-cv-809-J-TEM

MICHAEL J. ASTRUE, Commissioner
of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This cause is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his claim for disability benefits. Plaintiff seeks reversal of the Commissioner's decision with directions for processing of payment, or alternatively, reversal and remand of the decision for further proceedings (*see* Doc. #1). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #25). Defendant filed a brief in support of the decision to deny disability benefits (Doc. #26). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings. Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations. Accordingly,

the instant matter has been decided on the written record. For the reasons set out herein, **the Commissioner's decision is AFFIRMED**.

## I. Procedural History

Plaintiff William Ambrose filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") disability payments on June 15, 2005, alleging disability as of April 29, 2005 (Tr. 93-97, 209-12). On January 14, 2008, a hearing was held before Administrative Law Judge Douglas A. Walker (the "ALJ") (Tr. 213-24). On March 27, 2008, the ALJ issued an unfavorable decision (Tr. 7-16). Plaintiff appealed this denial to the Appeals Council which denied his request for review on June 17, 2008, making the ALJ's decision the final decision of the Commissioner. Plaintiff now appeals. Because Plaintiff exhausted all of his administrative remedies, this case is now ripe for review under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).

For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation

process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v); 416.920(a)(4)(i-v)[1]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

---

[1] All references made to 20 C.F.R. will be to the 2009 edition unless otherwise specified.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations. 20 C.F.R. §§ 404.1512(c); 416.912(c).

### III. Discussion

Plaintiff alleges he became disabled in April 2005 due to chronic back, left shoulder, and neck pain (*see* Tr. 99). Plaintiff was fifty-two (52) years old at the time of the administrative hearing (Tr. 228). Plaintiff has a ninth grade education and past relevant work experience as a construction worker (Tr. 15, 100, 104, 106).

Plaintiff lives in Starke, Florida, and apart from a tricycle and a bicycle he apparently has no other means of transportation (*see* Tr. 218).[2] Plaintiff's administrative hearing was first scheduled for August 9, 2007 in Ocala, Florida, before ALJ Chester G. Senf (Tr. 38-41). At Plaintiff's request, due to his lack of transportation, that hearing was rescheduled for Wednesday, January 30, 2008 (also in Ocala, Florida) (Tr. 45-50, 216). The hearing was again rescheduled for January 14, 2008 (and was to be held in Gainesville, Florida) (Tr. 52). Presumably, the hearing was rescheduled in Gainesville so that Plaintiff could get there more easily. Consequently, ALJ Walker, who resides in Alachua County, was assigned to conduct the proceedings (*see* Doc. #25 at 2). Plaintiff appeared at this hearing (Tr. 113-224), as did his mother and sister, both of whom drove from South Carolina in order to attend the hearing on their brother's behalf (Tr. 215-17).

At Plaintiff's request at the hearing, the ALJ continued the hearing until March 10, 2008 in order to allow Plaintiff additional time to secure a new representative (Tr. 71, 277). Plaintiff testified that his attorney representative, Marcella A. Taylor, did not wish to attend the hearing, and that he intended on writing a letter asking her to withdraw from his representation (Tr. 216). The record, however, reveals that, by letter dated January 11, 2008, Ms. Taylor informed both Plaintiff and the Commissioner of her withdrawal from representation of Plaintiff (Tr. 20). Regardless, on January 29, 2008, Plaintiff appointed a second, representative, Robert Stutler (Tr. 19). Mr. Stutler, who was a non-attorney representative, withdrew from representation on February 13, 2008 (Tr. 18). Plaintiff then

---

[2]At the January 14, 2008, hearing Plaintiff testified that he either rides a tricycle or a bicycle for transportation (Tr. 218). At the March 10, 2008 hearing, however, Plaintiff testified that he took a bus to South Carolina in order to borrow a truck from his family, which he drove to Gainesville, Florida, to attend the hearing (Tr. 241-42).

5

appeared, and testified, at the March 10, 2008 hearing without a representative (Tr. 225-55).

In his decision, the ALJ determined Plaintiff had the following "severe" impairments: degenerative disc disease of the cervical spine and chronic left shoulder and neck pain (Tr. 12). After a review and evaluation of the medical evidence and subjective testimony, the ALJ found Plaintiff retains the following residual functional capacity ("RFC") for light work except that he must avoid lifting over his shoulder with the left arm (Tr. 13).[3] Based on this RFC, the ALJ determined Plaintiff could not return to his past relevant work as a construction worker (Tr. 15). The ALJ found, however, that Plaintiff's additional limitation of needing to avoid lifting over shoulder level with his left arm had little to no effect on the occupational base of unskilled light work (Tr. 16). Consequently, the ALJ relied on the Medical-Vocational Guidelines (the "Grids") Rules 202.11 and 202.18 in determining Plaintiff could perform other work in the regional and national economy despite his limitations (Tr. 16).

When a claimant's vocational characteristics coincide with the factors of a rule in the Grids, the existence of jobs in the national economy is established and the claimant is considered not disabled. 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a; 20 C.F.R. Pt. 404, Subpt. P, Appx. 2 § 200.00(b); *Heckler v. Campbell*, 461 U.S. 458, 461-62, 470 (1983); *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40, 1242-43 (11th Cir. 2004); *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). Since the ALJ found, pursuant to application of the Grids, that Plaintiff was able to perform other work despite his work-related

---

[3]In his current appeal, Plaintiff does not contest the ALJ's RFC assessment (Doc. #13 at 7).

limitations, he entered a determination of not disabled (Tr. 16).

Plaintiff contends that, at the March 10, 2008 hearing, the ALJ failed to elicit a knowing and intelligent waiver from him with respect to his statutory right to counsel (Doc. #25 at 3-7). Plaintiff maintains that, as a result, he was prejudiced (Doc. #25 at 3-7). The Court is not persuaded by Plaintiff's arguments for the reasons stated herein.

A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ. *See Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir.1995), *citing Smith v. Schweiker*, 677 F.2d 826 (11th Cir.1982) and 42 U.S.C. § 406. In addition, the Commissioner has a duty to notify a claimant, in writing, of his or her right to counsel before a hearing. 42 U.S.C. § 406; *see also Smith*, 677 F.2d at 828.[4] The deprivation of the statutory right to counsel at a Social Security hearing is a statutory wrong, not a constitutional wrong. *See Holland v. Heckler*, 764 F.2d 1560, 1563 (11th Cir.1985). Therefore, "there must be a clear showing of prejudice before [a court may] find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).[5]

---

[4] In this instance, Plaintiff was notified, in writing, of his right to be represented at the administrative hearing (*see* Tr. 32-33, 36).

[5] If a claimant does not waive his or her right to representation, the ALJ's obligation to develop a full and fair record rises to a special duty. *Brown*, 44 F.3d at 934. In carrying out this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* (*quoting Smith*, 677 F.2d at 829). But, "the Social Security examiner . . . does not act as counsel. He [or she] acts as an examiner charged with developing the facts. *Smith*, 677 F.2d at 829 (*quotations and citations omitted*).

Social Security administrative hearing proceedings are non-adversarial and informal in nature. 20 C.F.R. § 404.900(b); *Ware v. Schweiker*, 651 F.2d 408, 413 (5th Cir. 1981).[6]

As stated in *Smith v. Schweiker*,

> We [the Eleventh Circuit] are concerned not so much with whether every question was asked which might have been asked had [the plaintiff] been represented by an attorney, as we are with whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.' Claimant's proffer of prejudice amounts to no more than speculations on ways in which an attorney could have bolstered his credibility before the ALJ. Although it is true, as the claimant asserts, that an attorney may have qualified some of the ALJ's questions, the record as a whole reveals that no relevant facts, documents, or other evidence were omitted from the ALJ's consideration or his findings.

677 F.2d 826, 829 (11th Cir. 1982).

Here, Plaintiff maintains that the following dialog between Plaintiff and the ALJ, demonstrates that Plaintiff did not knowingly and intelligently waive his right to counsel (Doc. #25 at 3-5).

> **ALJ**: We want you to be comfortable. If you need to take a break at any time - -
> **CLMT**: Yeah. The attorney I was trying to get didn't have time to prepare my case.
> **ALJ**: Yeah.
> **CLMT**: So - -
> **ALJ**: And there's water behind you. If you want some water at any time, don't hesitate to let me go - - let me know here. If you need to take a break, don't hesitate to let me know.

(Tr. 227).

Plaintiff further contends that the following statement made by the ALJ in the body of his decision is disingenuous: "[a]lthough informed of the right to representation, the claimant [Plaintiff] chose to appear and testify without the assistance of any attorney or

---

[6]Decisions of the Fifth Circuit rendered on or before September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

8

other representative" (Tr. 10). Plaintiff states that because the ALJ "cut [him] off and ignored" his statement regarding the unknown attorney, the record is silent as to whether Plaintiff was going to ask the ALJ to postpone the hearing in order for him to obtain representation (Doc. #25 at 4).

Plaintiff is correct that the record is silent in this regard. Here, the Court has available for review only a transcript of the proceedings. It is impossible to glean from the transcript either Plaintiff's or the ALJ's tone of voice, demeanor, or the length of time that elapsed from the moment Plaintiff stated "so" and when the ALJ subsequently stated that, since he wanted Plaintiff to be comfortable, there was water available to him (Tr. 227). Plaintiff states that he was "cut off"; however, the transcript does not necessarily reveal that Plaintiff was, in fact, interrupted or cut off. For instance, the transcript em dashes [ - - ] appear to indicate only a pause, as these markings are also present in the subsequent statement made by the ALJ, *supra*, and do not otherwise indicate that he was interrupted. Specifically, that portion of the transcript reads as follows: "If you want some water at any time, don't hesitate to let me go - - let me know here. If you need to take a break, don't hesitate to let me know." Tr. 227).

The Court would also note that it finds it significant that Plaintiff himself does not claim that, at the moment in question, he was still engaged in the process of trying to obtain representation (*see* Doc. #25 at 4). Nor does Plaintiff definitively assert that the putative attorney representative merely needed a continuance of the hearing in order to have more time to prepare (*see* Doc. #25 at 4). In support of his argument in this regard, Plaintiff states:

9

> the record is silent as to whether this [putative] attorney was a third representative for whom Plaintiff AMBROSE was asking for additional time to prepare for a hearing, or simply an attempt to find counsel to represent him at the hearing. *In any event, it is clear that ALJ Walker did not ask if the attorney would represent Plaintiff AMBROSE if given sufficient time to prepare*. ALJ Walker simply proceeded with the hearing as if Plaintiff AMBROSE had not mentioned trying to secure an attorney.

(Doc. #25 at 4) (*emphasis added*).

Pursuant to this argument, it appears Plaintiff's attorney is trying to speculate as to what Plaintiff may have been thinking when he informed the ALJ that the attorney he was trying to obtain stated he did not have time to prepare. Regardless, it appears that Plaintiff would have the entire onus placed upon the ALJ for determining what Plaintiff and/or his putative attorney's intentions were in this regard, if any.

The record reveals that Plaintiff was informed that he could have a representative assist him with his claim. Specifically, in the denial notice at the initial level, dated August 31, 2005, the Commissioner advised Plaintiff that he might want help with his appeal and could have a friend, lawyer, or someone else assist him (Tr. 36). The notice also stated that there were groups that could find an attorney for Plaintiff or provide him free legal services (Tr. 36). In addition, the notice informed Plaintiff that the Commissioner could give him a list of groups that could help him with his appeal (Tr. 36). Further, the denial notice at the reconsideration level, dated January 27, 2006, reiterated the same information regarding Plaintiff's right to representation (Tr. 33, 204). The notice informed Plaintiff that he had the right to have a friend, attorney, or someone else help him with his hearing (Tr. 33, 204).

Beyond the written notices, Plaintiff has demonstrated his knowledge of his right to counsel. For example, at the January 14, 2008 hearing, Plaintiff informed the ALJ that he

10

intended to request that his attorney withdraw from his representation (Tr. 217). Pursuant to this information, Plaintiff was granted a continuance of two months in order for him to try and obtain another representative (Tr. 221).[7] By January 29, 2008, Plaintiff had obtained a second representative to assist him, but for whatever reason this representative withdrew on February 13, 2008 (Tr. 18-19).

The fact that Plaintiff informed the ALJ at the January 14, 2008 hearing that he wanted to obtain a new attorney shows he understood his right to representation and was able to exercise his right (*see* Tr. 49, 383-84). The record thus establishes that the Commissioner informed Plaintiff of his right to representation and that Plaintiff knowingly and voluntarily waived his right to representation by testifying at the March 10, 2008 hearing without a representative. Plaintiff had adequate information to allow him to make an independent, informed choice, and the ALJ was not obligated to further explain to Plaintiff his right to representation or reschedule the hearing for a fifth time without even being asked to do so. *See Graham*, 129 F.3d at 1423; *see also Duncan v. Sec. of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986) (evidence showed that the claimant "was aware of his right to counsel and that he voluntarily waived that right. Under these circumstances, the ALJ had no further duty to discuss [the claimant's] right to representation").

Even assuming *arguendo* that Plaintiff did not make a knowing and intelligent waiver of his right to counsel (which would be a strained conclusion in light of the fact Plaintiff garnered a continuance at the January 14, 2008 hearing due to the fact he wanted to

---

[7] It should be noted that this was Plaintiff's fourth hearing continuance (Tr. 221).

attempt to procure new counsel (Tr. 216-17, 221)), Plaintiff has not shown that he has suffered prejudice in this instance.

To illustrate, Plaintiff claims that prejudice in this case arises out of the ALJ's "failure to correlate the February 11, 2008 MRI with his symptoms [of pain] over the preceding three or four years" (Doc. #25 at 6).[8] Plaintiff claims that if he had the benefit of counsel, his counsel would have:

> explained to the ALJ that the MRI done at Shands at Starke Diagnostic Radiology Consultation (Tr. 167) on February 11, 2008 (which found nerve root impingement) establishes an objective basis for Plaintiff's complaints of pain; and requested that the case either be referred to the State Agency with the new MRI information, or, that the Plaintiff and the new MRI be sent out to one of the Defendant's consulting neurologists for an evaluation.

(Doc. #25 at 6).

The subject February 11, 2008 MRI results revealed the following: "At the C6-C7 level there is broad-based disc osteophyte complex [bone spur growth] causing impression upon the anterior thecal sac as well as narrowing of the bilateral neural foramina. Contact with the exiting spinal nerves noted." (Tr. 167). Plaintiff claims this evidence would have "established an objective basis for his complaints of pain" (Doc. #25 at 6). The ALJ, however, noted this evidence and found in Plaintiff's favor at Step 2 of the sequential evaluation process by finding Plaintiff had the severe impairments of degenerative disc disease of the cervical spine and chronic left shoulder and neck pain (Tr. 12). The ALJ considered these impairments in combination when determining Plaintiff's RFC, and accounted for Plaintiff's chronic left shoulder and neck pain by including a limitation on

---

[8]To correlate is to establish a mutual, complementary, parallel, or reciprocal relation between things; or to demonstrate or establish a correlation. WEBSTER'S II NEW COLLEGE DICTIONARY 253 (Marion Severynse et al. eds., Houghton Mifflin Co. 1999).

Plaintiff's ability to lift his left arm over shoulder level (*see* Tr. 12-14).

Contrary to Plaintiff's assertion, the ALJ did not need an attorney to explain to him that Plaintiff's February 11, 2008 MRI established an objective basis for Plaintiff's pain; the ALJ reached this conclusion independently (Tr. 13). To illustrate, the ALJ discussed Plaintiff's MRI in his decision and noted that the MRI "showed a broad based disc osteophyte complex at C6-7 causing an impression upon the anterior thecal sac as well as narrowing of the bilateral neural foramina" (Tr. 13). The ALJ then correlated the MRI results with Plaintiff's symptoms when he determined that Plaintiff's medically determinable impairments, *supra*, could reasonably be expected to produce the alleged symptoms (Tr. 14). Claimant's speculation that additional testimony or evidence might have supported his claim is not a sufficient basis for requiring remand to further development of the record.

The severity of a medically ascertained impairment must be measured in terms of its effect upon a claimant's ability to work and not simply in terms of deviation from medical standards of bodily normality. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (finding the mere existence of impairments "does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard"). Here, as will be discussed more fully below, Plaintiff simply failed to demonstrate how any of his impairments, alone or in combination, render him unable to perform any work activity.

Without citing any authority, Plaintiff also claims that the ALJ failed in his duty to develop the record because he did not send Plaintiff's February 11, 2008 MRI results to a state agency physician or consultative doctor for review, *supra* (Doc. #25 at 7). The Regulations provide that a consultative examination will be ordered if the claimant's medical

sources cannot or will not provide sufficient medical evidence about the claimant's impairment to determine whether the individual is disabled. 20 C.F.R. §§ 404.1517, 416.917, 404.1519a(b), 416.919a(b). "[T]he claimant bears the burden of proving he is disabled, and, consequently, he [or she] is responsible for producing evidence in support his [or her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also Bowen*, 482 U.S. at 146 n.5 ("it is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so"). An ALJ is not required to develop evidence to prove a claimant's claim or otherwise act as his counsel. *Smith*, 677 F.2d at 829.

Here, the ALJ received into evidence the February 11, 2008 MRI at the March 10, 2008 hearing (*see* Tr. 229-31).[9] The ALJ mentions this evidence specifically in his decision, which shows he considered it (*see* Tr. 13, 14). Further, the ALJ found Plaintiff's shoulder and neck pain, along with his degenerative disc disease, to be severe impairments (Tr. 12). The ALJ then considered these impairments, in combination, and accounted for the limitations that stem therefrom in his RFC; however, the ALJ only included limitations which he found are supported by the evidence of record (Tr. 12-14). Specifically, the ALJ found Plaintiff was capable of performing light work, except that he cannot lift his left arm above shoulder level (Tr. 13-14).[10]

---

[9] At the March 10, 2008 hearing, Plaintiff brought a briefcase which contained additional medical documents that Plaintiff offered into evidence, which the ALJ accepted (*see* Tr. 229, 231).

[10] Plaintiff does not contest the ALJ's RFC finding or contend the ALJ erred in relying on the Grids to find that Plaintiff could perform other work in the national economy (*see* Doc. #25). *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (noting that in the absence of an argument, the issue is deemed abandoned); *Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir.1994) (stating that "[a]s a general principle, this Court will not address an argument that has not been raised in the district court").

These limitations are supported by the record. To illustrate, the ALJ noted that, although Plaintiff has alleged difficulties lifting his left upper extremity, "physical examinations consistently showed he had full range of motion of the left upper extremity and he had normal motor strength and sensation" (Tr. 14). The Court's independent review of the record reveals this statement by the ALJ is substantiated by the record (*see* Tr. 137-30, 142, 155, 156, 159-67, 168).

Plaintiff claims that, if he had the benefit of counsel, "it seems unlikely that the ALJ would have relied on the 2005 opinion of Dr. Parr that Plaintiff AMBROSE simply had degenerative disc disease" (Doc. #25 at 7). A careful reading of the ALJ's decision in this regard, however, reveals that the ALJ did not simply rely on Dr. Parr's diagnosis of degenerative disc disease of the cervical spine, but instead gave great weight to one of the limitations Dr. Parr assessed, which was no lifting over shoulder level with his left arm due to degeneration of Plaintiff's cervical spine and shoulder pain (Tr. 15, 137, 142-43).

Plaintiff states that Dr. Parr's diagnosis of degenerative disc disease, in retrospect of the February 11, 2008 MRI, "was clearly a misdiagnosis" (Doc. #25 at 6); however, Dr. Parr's opinion was based on review of Plaintiff's x-ray results, and a January 25, 2008 x-ray reveals that Plaintiff suffers from both an osteophyte complex (bone spur growth) at C6-7 <u>and</u> degenerative disc disease of the cervical spine at the C6-7 level (*see* Tr. 170-71; *see also* Tr. 142). Consequently, it does not appear that Dr. Parr's diagnosis of cervical degenerative disc disease was a "misdiagnosis," as Plaintiff alleges (*see* Doc. #25 at 6; Tr. 142, 170-71).

The ALJ further found Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms; however, the claimant's

15

[Plaintiff] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]. . . ." (Tr. 14). As noted above, the ALJ found Plaintiff's physical examinations did not reveal any limitations greater than those he assessed, and Plaintiff does not challenge the ALJ's RFC or his credibility finding. Moreover, the ALJ noted that Plaintiff actually drove a truck from South Carolina to Gainesville, Florida, in order to attend the March 10, 2008 hearing, and that "[t]his suggests that the claimant has no difficulties with sitting, operating foot controls, turning his head to look around, and using his upper extremities to steer" (Tr. 14, 241-42).

## IV. Conclusion

Upon due consideration, the undersigned finds the decision of the Commissioner was decided according to proper legal standards and is supported by substantial evidence. As neither reversal nor remand is warranted in this case, the decision of the ALJ is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this 31st day of March, 2010.

Copies to all counsel of record

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge